IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 27 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

CAMAFEL BUILDING INSPECTIONS,
INC., FILER & HAMMOND
ARCHITECTS, INC., and FORD,
DEAN & MALLARD, P.A., on behalf
of themselves and others
similarly situated,

  Plaintiffs,

v.

BELLSOUTH ADVERTISING &
PUBLISHING CORP.,

  Defendant.

CIVIL ACTION NO.
1:06-CV-1501-JEC

### ORDER AND OPINION

This case is presently before the Court on defendant's Motion for Judgment on the Pleadings [40]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Judgment on the Pleadings [40] should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Plaintiffs are all Florida corporations doing business in the Miami-Dade County, Florida area. (Amended Compl. [32] at ¶¶ 2-4.) Defendant is an advertising company that publishes and sells advertising space in regional telephone directories known as "The Real Yellow Pages." (*Id.* at ¶ 9.)

In June of 2005, plaintiffs entered into contracts with defendant to advertise in the 2005-2006 Miami-Dade County Yellow Pages. (*Id.* at ¶¶ 8, 30; Advertising Order and General Terms and Conditions ("AO"), attached to Compl. [1] at Ex. 1.) Pursuant to the contracts, defendant agreed to publish plaintiffs' advertisements in the Miami Yellow Pages, and to distribute the directory to residents in the Miami area. (AO at ¶ 2.) In return, plaintiffs agreed to make monthly payments during the publication term, which the contracts defined as beginning on the date of the directory's publication and ending on the date of the directory's replacement or discontinuance. (*Id.* at ¶¶ 3,4.)

Plaintiffs began making monthly payments to defendant in October of 2005. (Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings ("Pl.'s Resp.") [45] at 7.) Plaintiffs claim, however, that defendant did not fully publish or distribute the 2005-2006 directory until sometime after October of 2005. (Amended Compl. [32] at ¶ 13.) Plaintiffs also allege that defendant breached its representations concerning the scope and coverage area of the directory. (*Id.* at ¶¶ 10-11.)

Based on these allegations, plaintiffs filed this action, asserting claims for breach of contract and unjust enrichment. (*Id.* at ¶¶ 39-49.) Essentially, plaintiffs seek to recoup the money they paid to defendant before defendant fully published and distributed

2

the 2005-2006 Miami Yellow Pages. (*Id.*) Defendant has filed a motion for judgment on the pleadings as to both of plaintiffs' claims, which is presently before the Court. (Def.'s Mot. for J. on the Pleadings [40].)

## DISCUSSION

### I. Standard

In ruling on defendant's motion, the Court must assume plaintiffs' allegations are true, and construe all facts and inferences in the manner most favorable to plaintiffs. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005). Judgment on the pleadings is only appropriate if plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Horsley v. Feldt,* 304 F.3d 1125, 1131 (11th Cir. 2002).

### II. Plaintiffs' Breach of Contract Claim

In Count I of their Complaint, plaintiffs assert a claim for breach of contract. (Amended Compl. [32] at ¶¶ 39-44.) Defendant contends that it is entitled to judgment on this claim as a result of several provisions in its form contract, the Advertising Order ("AO"). (Def.'s Mot. for J. on the Pleadings [40] at 1-4.) Specifically, defendant argues that plaintiffs' claim is barred by the AO's Merger Clause, Force Majeure Clause, and "Publication and Term" Clause. (*Id.*)

The Publication and Term Clause provides that:

3

> Unless otherwise noted, the initial Term of this AO shall begin on the date of first publication of the Advertising and will continue through and include the publication dates of the directory but in any event shall end upon the replacement or discontinuance of the directory. . . . **THEREFORE, THE PUBLICATION OF A PRINTED DIRECTORY, AND CONSEQUENTLY THE TERM OF THIS AO, MAY BE LONGER OR LESS THAN 12 MONTHS, WITHOUT FURTHER NOTICE TO [PLAINTIFFS].**

(AO at ¶ 3 (emphasis in original).) As interpreted by defendant, the Publication and Term Clause authorizes defendant to unilaterally determine the length of the publication term by deciding when to publish, and when to replace, its yearly directory. (Def.'s Mot. for J. on the Pleadings [40] at 2-3.) Consequently, defendant argues, plaintiffs cannot prevail on their claim that defendant failed to "timely" publish and distribute the directory. (*Id.*) Defendant further suggests that plaintiffs are required to pay the same amount to advertise in the 2005-2006 directory, regardless of the ultimate length of the publication term. (*Id.*; Def.'s Reply Br. [49] at 2-5.)

Defendant is partially correct. The Publication and Term Clause clearly authorizes defendant to determine the length of the publication term, and the term need not last a full twelve months to comply with the AO. (AO at ¶ 3.) However, neither the Publication and Term Clause, nor any other provision of the AO, permits defendant to collect the same payment from plaintiffs regardless of the length of the publication term. In fact, the AO provides for *monthly* payment over the course of the publication term. (*Id.* at ¶ 4

4

(requiring plaintiffs to "pay for . . . advertising at the monthly rates reflected herein or on any Detailed Confirmation hereof").)[1] Although defendant is thus authorized to shorten the publication term to, for example, ten months, in that case it is only entitled to ten monthly payments. (*Id.*)

In support of their claim that defendant failed to timely publish and distribute the 2005-2006 directory, plaintiffs contend that they began paying for advertising in October of 2005, but that defendant did not fully publish and distribute its directory until sometime after October of 2005. (Pl.'s Resp. [45] at 4.) Plaintiffs' timeliness claim thus essentially amounts to a claim that plaintiffs paid for advertising services that they did not receive. (*Id.*) This claim is cognizable under the AO, and is not barred by the Publication and Term Clause.

The Publication and Term clause states, further, that defendant:

> reserves the right to make changes to printed directories (including without limitation changes to . . . scope, coverage area and number of copies printed . . . all without further notice to [plaintiffs].

(AO at ¶ 3.) Defendant claims that this language gives it "absolute discretion" concerning the "coverage area" of its directory and the "number of copies printed." (Def.'s Mot. for J. on the Pleadings

---

[1] Plaintiffs received a confirmation sheet detailing the monthly charges they were required to pay for the specific advertising services they purchased. (*See* Compl. [1] at Ex. 1.)

[40] at 3.) According to defendant, the Publication and Term Clause thus bars plaintiffs' claim that defendant did not distribute a "sufficient number" of directories. (*Id.*)

The above language gives defendant broad discretion to determine the coverage area of its directory, and the number of copies it will distribute. As defendant acknowledges in its Reply brief, however, it is required to exercise that discretion in good faith. (Def.'s Reply Br. [49] at 12.) *See Jackson Elec. Membership Corp. v. Georgia Power Co.*, 257 Ga. 772, 774, 364 S.E. 2d 556, 558 (1988)("both parties are under an implied duty of good faith in carrying out the mutual promises of their contract") and *Newport Timber Corp. v. Floyd,* 247 Ga. 535, 540, 277 S.E. 2d 646, 650 (1981)("the discretion given to [plaintiff] was to be exercised in a sound and honest manner and in good faith").[2] It is unclear from the pleadings how many copies of the directory defendant distributed, or how many copies defendant was required to distribute to meet its good faith obligation. Accordingly, defendant is not entitled to judgment on plaintiffs' claim that defendant failed to publish and distribute a sufficient number of copies of the 2005-2006 Miami Yellow Pages.

---

[2] The parties do not dispute that Georgia law is applicable to plaintiffs' claims. The AO contains a choice of law provision, which states: "This AO and any associated forms shall be governed and construed in accordance with the laws of the State of Georgia." (AO at ¶ 17.)

AO 72A
(Rev.8/82)

Defendant contends that it is entitled to judgment in any event, as a result of the AO's Merger Clause. The Merger Clause provides that:

> This AO, if accepted by us, and any associated forms, which specifically incorporate these General Terms and Conditions, constitute the entire agreement between the parties concerning all matters relating hereto, and supersede any prior discussions, agreements or understandings, and there are no promises, representations or agreements between the parties relating to the subject matter of this AO other than as set forth in this AO.

(AO at ¶ 17.) The Court agrees with defendant that the Merger Clause prohibits plaintiffs from seeking to enforce representations that were not part of the AO. *See First Data POS, Inc. v. Willis,* 273 Ga. 792, 796, 546 S.E. 2d 781, 782 (2001) ("in an arm's length business transaction, pre-contractual representations are superceded by a valid contractual merger clause, and cannot form the basis of post-contractual claims") and *S. Bus. Commc'ns, Inc. v. Matsushita Elec. Corp. of Am.,* 806 F.Supp. 950, 961 (N.D. Ga. 1992)(Carnes, J.)("Georgia law provides that when the parties to a contract 'agreed that [the] written contract contained the entire agreement . . . , any understanding not embodied in the writing is irrelevant.'")(quoting *Quigley v. Jones,* 174 Ga. App. 787, 332 S.E. 2d 7 (1985)). Plaintiffs will therefore not likely succeed on any of their claims that rely on pre-contractual representations, such as defendant's alleged promise that it would "distribute the number of

7

The Real Yellow Pages commensurate with the number of Residential and Business listings in the White Pages." (Amended Compl. [32] at ¶ 35.)

However, plaintiffs' breach of contract claim does not depend entirely on pre-contractual representations. Plaintiffs generally allege in their Complaint that:

> Defendant breached its agreement with Plaintiffs . . . relative to the contracted for advertising services in The Real Yellow Pages by not causing a sufficient number of The Real Yellow Pages to be published and/or by failing to timely distribute the directories that were published.

(Amended Compl. [32] at ¶ 13.) The Merger Clause does not entitle defendant to judgment on this claim, which is based on the express terms of the AO, as well as defendant's implied obligation to exercise its discretion under the AO in good faith.

Finally, defendant cites the Force Majeure Clause in support of its motion for judgment. The Force Majeure Clause provides that defendant:

> shall not be held responsible for any delay or failure in performance of any part of this Agreement to the extent that such delay or failure is caused by . . . [an] act of God, or other similar causes beyond [defendant's] control.

(AO at ¶ 16.) Defendant argues that any delays in publication and distribution were the result of Hurricane Wilma, which plaintiffs describe in their Complaint as an act of God. (Def.'s Mot. for J. on

8

the Pleadings [40] at 8.)

As an initial matter, although plaintiffs refer to Hurricane Wilma as an "act of God," they do not contend that defendant's delays in publication and distribution are entirely attributable to the hurricane. (Amended Compl. [32].) After alleging that defendant "breached its agreement with Plaintiffs . . . by not causing a sufficient number of The Real Yellow Pages to be published and/or by failing to timely distribute the directories that were published," plaintiffs state: "Additionally, during the time The Real Yellow Pages were being distributed in Miami-Dade County, Hurricane Wilma struck South Florida. That act of God impacted the distribution of The Real Yellow Pages." (*Id.* at ¶¶ 13,14.) Construing the facts most favorably to plaintiffs, Hurricane Wilma merely exacerbated defendant's initial breach of its contractual obligations.

In addition, although the Force Majeure Clause protects defendant from liability in the event defendant is unable to perform its contractual obligations, it does not entitle defendant to payment by plaintiffs in spite of defendant's non-performance. (AO at ¶ 16.) The Force Majeure Clause gives defendant three options in the event of an act of God: 1) terminate the Agreement as to services not already received; 2) suspend the Agreement for the duration of the time that defendant is not able to perform; or 3) resume performance of the Agreement when defendant is once again able to perform with an

9

option to extend or shorten the period of the Agreement. (*Id.*) The clause thus contemplates termination or suspension of both parties' contractual obligations, including plaintiffs' duty to make monthly payments, if an act of God interferes with defendant's performance. (*Id.*)

In short, neither the Force Majeure Clause, the Merger Clause, nor the Publication and Term Clause disposes of plaintiffs' breach of contract claim as a matter of law. Assuming plaintiffs' allegations are true, they are entitled to recover from defendant for breach of contract. Accordingly, defendant's motion for judgment on this claim is **DENIED**.

### III. Plaintiff's Unjust Enrichment Claim

In Count II of their Complaint, plaintiffs assert a claim for unjust enrichment. (Amended Compl. [32] at ¶¶ 45-49.) The facts underlying plaintiffs' breach of contract and unjust enrichment claim are the same: plaintiffs contend that they paid for advertising services that defendant did not provide, and that, under the circumstances, it would be inequitable to permit defendant to keep their payments. (*Id.*)

The parties agree that their relationship is governed by a valid and binding contract. (Amended Compl. [32] at ¶ 31; Answer [39] at ¶ 31.) The theory of unjust enrichment only applies "'when there is *no* legal contract and when there has been a benefit conferred which

10

would result in an unjust enrichment unless compensated.'" *Tidikis v. Network for Med. Commc'ns & Research, LLC,* 274 Ga. App. 807, 811, 619 S.E. 2d 481, 485 (2005)(quoting *Smith Serv. Oil Co. v. Parker,* 250 Ga. App. 270, 272, 549 S.E. 2d 485 (2001)). *See also, Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC,* 426 F.Supp. 2d 1356, 1372 (N.D. Ga. 2006)(Thrash, J.)(recognizing that, under Georgia law, "unjust enrichment is available only when there is no legal contract"). In this case, any benefit conferred upon defendant arose from plaintiffs' obligations under the contract. *Tidikis,* 274 Ga. App. at 811, 619 S.E. 2d at 485. Accordingly, defendant's motion for judgment on the pleadings as to plaintiffs' unjust enrichment claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendant's Motion for Judgment on the Pleadings [40].

SO ORDERED, this 27 day of February, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE