IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 0 7 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

CAMAFEL BUILDING INSPECTIONS,
INC., FILER & HAMMOND
ARCHITECTS, INC., and FORD,
DEAN & MALLARD, P.A., on behalf
of themselves and others
similarly situated,

       Plaintiffs,

v.

BELLSOUTH ADVERTISING &
PUBLISHING CORP.,

       Defendant.

CIVIL ACTION NO.
1:06-CV-1501-JEC

## ORDER AND OPINION

This case is presently before the Court on plaintiffs' Motion
for Class Certification [68], plaintiffs' Motion for Judgment on the
Pleadings on Defendant's Counterclaims [84], defendant's Motion for
a Scheduling Conference [86], defendant's Motion for an Extension of
the Page Limitation to Respond to Plaintiffs' Motion for Class
Certification [94], plaintiffs' Motion to Strike and for Sanctions
[104], defendant's Motion for Protective Order [105], plaintiffs'
Motion for a Legal Accounting [108], plaintiffs' Motion to Strike
[109], defendant's Unopposed Motion for an Extension of Time to
Respond to Plaintiffs' Motion for an Accounting [118], defendant's
Motion for Summary Judgment [119], defendant's Motion to Strike
[138], plaintiffs' Motion for Partial Summary Judgment [139],

plaintiffs' Motions for Extension of Time [147, 148], and plaintiffs' Motion to Determine Sufficiency of Responses [150].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' Motion for Class Certification [68] should be **DENIED**, plaintiffs' Motion for Judgment on the Pleadings on Defendant's Counterclaims [84] should be **GRANTED**, defendant's Motion for a Scheduling Conference [86] should be **DENIED as moot**, defendant's Motion for an Extension of the Page Limitation [94] should be **GRANTED**, plaintiff's Motion to Strike and for Sanctions [104] should be **DENIED**, defendant's Motion for Protective Order [105] should be **DENIED as moot**, plaintiffs' Motion for a Legal Accounting [108] should be **DENIED**, plaintiffs' Motion to Strike [109] should be **DENIED as moot**, defendant's Unopposed Motion for an Extension of Time [118] should be **GRANTED**, defendant's Motion for Summary Judgment [119] should be **GRANTED**, defendant's Motion to Strike [138] should be **DENIED**, plaintiffs' Motion for Partial Summary Judgment [139] should be **DENIED**, plaintiffs' Motions for Extension of Time [147, 148] should be **GRANTED**, and plaintiffs' Motion to Determine Sufficiency of Responses [150] should be **DENIED as moot**.

### BACKGROUND

Plaintiffs are all Florida corporations doing business in the Miami-Dade County, Florida area.  (Amended Compl. [32] at ¶¶ 2-4.)

2

Defendant is an advertising company that publishes and sells advertising space in regional telephone directories known as "The Real Yellow Pages." (*Id.* at ¶ 9.)

In June of 2005, plaintiffs entered into contracts with defendant to advertise in the 2005-2006 Miami-Dade County Yellow Pages. (*Id.* at ¶¶ 8, 30; Advertising Order and General Terms and Conditions ("AO"), attached to Compl. [1] at Ex. 1.) Pursuant to the contracts, defendant agreed to publish plaintiffs' advertisements in the Miami Yellow Pages, and to distribute the directory to residents in the Miami area. (AO at ¶ 2.) In return, plaintiffs agreed to make monthly payments during the publication term, which the contracts defined as beginning on the date of the directory's publication. (*Id.* at ¶¶ 3,4.)

Plaintiffs began making monthly payments to defendant in October of 2005. (Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings ("Pl.'s Resp.") [45] at 7.) Plaintiffs claim, however, that defendant did not fully publish or distribute the 2005-2006 directory until sometime after October of 2005. (Amended Compl. [32] at ¶ 13.) Plaintiffs also allege that defendant breached its representations concerning the scope and coverage area of the directory. (*Id.* at ¶¶ 10-11.) Based on these allegations, plaintiffs filed this action, asserting claims for breach of contract and unjust enrichment. (*Id.* at ¶¶ 39-49.) Essentially, plaintiffs seek to recoup the money they

3

paid to defendant before defendant fully published and distributed the 2005-2006 Miami Yellow Pages.  (*Id.*)

The Court previously granted defendant's motion to dismiss plaintiffs' unjust enrichment claim.  (Order [56].)  The parties subsequently filed cross motions for summary judgment on the breach of contract claim.  (Def.'s Mot. for Summ. J. [119]; Pls.' Mot. for Summ. J. [139].)  Plaintiffs also filed a motion to certify a class comprised of all the advertisers in the 2005-2006 Miami-Dade County Yellow Pages. (Pls.' Mot. for Class Certification [68].)  In addition, plaintiffs filed a motion for judgment on the pleadings on defendant's counterclaims.  (Pls.' Mot. for J. on the Pleadings [84].)  All of these motions, and numerous ancillary  motions, are currently before the Court.

### DISCUSSION

### I.   The Parties' Motions for Summary Judgment

#### A.   Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.""  FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue

4

is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion.  *Id.* at 323.  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

5

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

### B.    The Voluntary Payment Doctrine

Plaintiffs in this case claim that they paid for advertising in the 2005-2006 Miami-Dade County Yellow Pages that they did not receive.   (Amended Compl. [32] at ¶¶ 39-49.)   Although plaintiffs assert a claim for breach of contract, they are not pursuing lost profits.   (Second Amended Compl. [60] at 22.)   Instead, plaintiffs seek a refund of the payments that they made to defendant while the distribution of the 2005-2006 Yellow Pages was delayed.   (*Id.*) Plaintiffs' refund theory implicates Georgia's voluntary payment doctrine.   *See Cotton v. Med-Cor Health Info. Sys., Inc.*, 221 Ga. App. 609, 611, 472 S.E. 2d 92, 95-96 (1996) (explaining the voluntary payment doctrine).

The voluntary payment doctrine is codified in O.C.G.A. § 13-1-13, which provides:

Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the

6

other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.  Filing a protest at the time of payment does not change the rule prescribed in this Code section.

O.C.G.A. § 13-1-13.[1]  Pursuant to § 13-1-13, payments are deemed voluntary if they are made with the requisite factual knowledge and they are not "induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the money is paid."  *Cotton,* 221 Ga. App. at 611, 472 S.E. 2d at 96.  Voluntary payments cannot be recovered unless they were made "under an urgent necessity" or "to prevent the immediate seizure of person or property."  *Id.*; O.C.G.A. § 13-1-13.

Undisputed evidence in the record demonstrates that the named plaintiffs were aware of the essential facts surrounding their claims at the time that they made the payments that are at issue in this case.  Carlos Felipe, the representative for Camafel Building Inspections, testified that he undertook an extensive investigation into the distribution delay of the 2005-2006 Yellow Pages.  (Felipe Dep. at 9-10.)  According to Mr. Felipe, shortly after he expected the 2005-2006 Yellow Pages to have been distributed, he contacted

---

[1]  The parties do not dispute that Georgia law is applicable to plaintiffs' claims.  The AO contains a choice of law provision, which states:  "This AO and any associated forms shall be governed and construed in accordance with the laws of the State of Georgia."  (AO at ¶ 17.)

7

approximately 15 or 16 realtors and other friends to confirm that they had received the new directory. (*Id.* at 10.)  These contacts informed Mr. Felipe that they could not locate his ad and, upon further questioning, acknowledged that they were still using the 2004-2005 directory. (*Id.* at 9.)  Mr. Felipe further investigated the status of the distribution in the course of his work as a home inspector. (*Id.* at 11-12.)  Although the delay was apparent from Mr. Felipe's investigation, Camafel continued to make monthly payments to defendant, ultimately paying for all 12 installments on its bill. (*Id.* at 34.)

Robert Filer, the representative for Filer & Hammond Architects, was similarly aware of the distribution delays at the time that Filer & Hammond made the relevant payments.  Mr. Filer specifically knew and complained to defendant about an alleged failure to distribute a copy of one of the 2005-2006 directories shortly after the expected distribution. (Filer Dep. at 20.)  According to Filer, he was fully aware of the distribution problems near the end of 2005. (*Id.* at 89, 91-93.)  Nevertheless, and even after joining this lawsuit as a named plaintiff in August 2006, Filer continued to make all of its payments to defendant. (*See* Pls.' Response to Def.'s Mot. for Summ. J. ("Pls.' Response") [129] at 6.)

Plaintiff does not present any evidence to rebut the above testimony.  In fact, plaintiff concedes that both of the named

8

plaintiffs were aware of the distribution delays caused by Hurricane Wilma when they made the payments that are at issue in this case.[2] (*Id.* at 15-16.)  Neither do plaintiffs suggest that the payments were induced by fraud or made under an urgent necessity.   Instead, plaintiffs argue that defendant contracted against the voluntary payment defense in the Force Majeure clause, which provides:

> Force Majeure.  We shall not be held responsible for any delay or failure in performance of any part of this Agreement to the extent that such delay or failure is caused by fire, flood, explosion, war, embargo, government requirement, terrorist act, civil or military authority, act of God, or other similar causes beyond our control ("Conditions").   If any such Condition occurs we shall give immediate notice to you and we may elect to (a) terminate this Agreement or part thereof as to Services not already rendered; (b) suspend this Agreement for the duration of the Condition, and obtain elsewhere Services comparable to those to be obtained under this Agreement; or (c) resume performance of this Agreement once the Condition ceases with an option to extend or shorten the period of this Agreement.

(AO at ¶ 16.)

According to plaintiffs, the Force Majeure clause imposes a contractual obligation on defendant to provide immediate notice to

---

[2]   Plaintiffs do not dispute that Ford, Dean & Mallard, P.A. no longer wants to participate in this lawsuit.  (*See* Def.'s Mot. for Summ. J. [119] at 7 and Pls.' Response to Def.'s Mot. for Summ. J. [129].)  Plaintiffs have the burden to demonstrate that the voluntary payment doctrine does not apply to Ford's claims.  *See Cotton,* 221 Ga. App. at 611, 472 S.E. 2d at 96.  They have not presented any evidence to suggest that Ford's payments were not voluntary or that the payments are recoverable under an exception to the voluntary payment doctrine.  In fact, plaintiffs have not responded in any way to defendant's arguments with respect to Ford.   Accordingly, defendant is entitled to summary judgment on Ford's claims.

AO 72A
(Rev.8/82)

plaintiffs of any "condition" causing a distribution delay, such as the delay that resulted from Hurricane Wilma. (Pls.' Response [129] at 9-10.) By failing to give this notice, plaintiffs argue, defendant forfeited its right to assert contractual defenses such as the voluntary payment defense. (*Id.* at 10.)

Defendant's failure to give immediate notice of a "condition" clearly precludes defendant from invoking the protection of the Force Majeure clause, or asserting any of the alternative remedies that are available under the clause. However, the Force Majeure clause is completely unrelated to the legal doctrine prohibiting recovery of payments that are deemed to be voluntary. Defendant's failure to give notice of a "condition" has no bearing whatsoever on the voluntary payment doctrine.[3]

Plaintiffs also mistakenly suggest that the voluntary payment

---

[3]   Plaintiffs similarly argue that defendant is equitably estopped from asserting the voluntary payment defense because of its failure to give notice pursuant to the Force Majeure clause. (Pls.' Response at 11-12.) As noted, the Force Majeure is irrelevant to the voluntary payment defense. In any case, equitable estoppel requires intentional deception and detrimental reliance. *See Hunnicutt v. Southern Farm Bureau Ins. Co.,* 256 Ga. 611, 612, 351 S.E. 2d 638, 640-41 (1987) ("'In order for equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped . . . by which another has been misled to his injury'") and *Georgia Farm Bureau Mut. Ins. Co. v. Vanhuss,* 243 Ga. App. 26, 532 S.E. 2d 135, 136 (2000) ("The doctrine of estoppel is predicated upon a detrimental change in position in reliance upon the conduct of the party to be estopped.") Plaintiffs have not presented any evidence on either of these essential elements.

10

doctrine does not apply because Mr. Felipe and Mr. Filer did not have "full knowledge of all of the facts . . . about the nature and extent of [the] delayed distribution." (*Id.* at 15-16.) Georgia courts routinely have applied the voluntary payment doctrine to preclude recovery of payments made without actual knowledge of all the facts as long as the payer had constructive knowledge of the material facts. *Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc.,* 270 Ga. App. 68, 70, 606 S.E. 2d 10, 12 (2004) ("even though [defendant] claims that it lacked actual knowledge of the rates it was charged, it had 'the means of such knowledge' at its disposal"). *See also Liberty Nat'l Life Ins. Co. v. Radiotherapy of Georgia, P.C.,* 252 Ga. App. 543, 546-47, 557 S.E. 2d 59, 63 (2001)(stating that the voluntary payment doctrine applies "to one who pays by mistake without a valid reason for failing to ascertain the truth") and *Cotton,* 221 Ga. App. at 611 ("The party seeking recovery must prove that . . . certain *material* facts were not known at the time of payment or a valid reason existed for failure to determine the truth") (emphasis added). In this case, plaintiffs had actual knowledge of the material facts, as well as the means of ascertaining the finer details surrounding defendant's distribution of the 2005-2006 Miami Yellow Pages.

Plaintiffs further argue that they should not be subject to the voluntary payment doctrine because they were contractually obligated

AO 72A
(Rev.8/82)

to make monthly advertising payments to defendant, and their contracts did not include a provision allowing them to withhold payment in the event of defendant's non-performance. (Pls.' Response [129] at 15.)   This argument is immaterial.  Georgia courts have emphasized that the voluntary payment doctrine applies to contractually mandated payments, even if payment is made under written protest, and even if non-payment would have subjected the payor to a collection action.  *See Henson v. Columbus Bank & Trust Co.,* 144 Ga. App 80, 83, 240 S.E. 2d 284, 287 (1977)(precluding recovery of allegedly illegal interest payments made pursuant to a bank note) and *Yeazel v. Burger King Corp.,* 241 Ga. App. 90, 99, 526 S.E. 2d 112, 120 (1999)("Georgia courts have held that '[m]ere apprehension or threats of a civil proceeding to enforce a claim, unaccompanied by any act of hardship or oppression, does not render a payment in response thereto involuntary in the sense that it can be recovered back.'")(quoting *Strachan Shipping Co. v. City of Savannah,* 168 Ga. 309, 315, 147 S.E. 555 (1929)).

As the party seeking a refund, plaintiffs have the burden of demonstrating that the voluntary payment doctrine does not bar their recovery.  *Cotton,* 221 Ga. App. at 611, 472 S.E. 2d at 96.  They have not met this burden.  Accordingly, the Court **GRANTS** defendant's Motion for Summary Judgment [119] and **DENIES** plaintiffs' Motion for Partial Summary Judgment [139].

12

AO 72A
(Rev.8/82)

II.   **Plaintiffs' Motion for Judgment on Defendant's Counterclaims**

    A.   **Standard for Judgment on the Pleadings**

In ruling on a motion for judgment on the pleadings, the Court assumes all well-pled allegations are true and construes all facts and inferences in favor of the non-moving party. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005). The Court should enter judgment when it is apparent from the pleadings that a party "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Horsley v. Feldt,* 304 F.3d 1125, 1131 (11th Cir. 2002). The pleadings include the complaint, answer, counterclaim, and reply to the counterclaim, as well as any attachments. FED. R. CIV. P. 7(a).

    B.   **Breach of Contract**

In its previous motion to dismiss, defendant argued that plaintiffs were required to pay the same amount to advertise in the 2005-2006 Yellow Pages, regardless of the length of the directory's publication term. (Def.'s Mot. for J. on the Pleadings [40] at 2-3.) The Court rejected defendant's argument, stating that:

> The Publication and Term Clause clearly authorizes defendant to determine the length of the publication term, and the term need not last a full twelve months to comply with the AO. However, neither the Publication and Term Clause, nor any other provision of the AO, permits defendant to collect the same payment from plaintiffs regardless of the length of the publication term. In fact, the AO provides for *monthly* payments over the course of the publication term. . . . Although defendant is thus authorized to shorten the

13

publication term to, for example, ten months, in that case it is only entitled to ten monthly payments.

(Order [60] at 4-5.)

Following the Court's Order, defendant asserted a breach of contract counterclaim against Filer and other "repeat advertisers" who advertised not only in the 2005-2006 Yellow Pages, but also in the 2004-2005 Yellow Pages.  (Def.'s Counterclaims [62] at 14-18.) In support of this claim, defendant contends that the publication term of the 2004-2005 Yellow Pages was extended by the same length of time that the distribution of the 2005-2006 Yellow Pages was delayed. (Id. at 17.)  This is because the 2004-2005 directory remained "on the street" and in use until it was replaced by the 2005-2006 directory.  (Id.)  Defendant claims that the repeat advertisers made only twelve monthly payments to advertise in the 2004-2005 Yellow Pages.  (Id. at 18.)  Applying the Court's interpretation of the AO, defendant argues that it is owed monthly payments from repeat advertisers for the length of time that the 2004-2005 publication term was extended.  (Id.)

Defendant's argument is precluded by the express terms of the 2005-2006 AO.  Pursuant to the AO, the 2005-2006 term began "on the date of first publication" of the new directory.  (AO at ¶ 3.) Defendant has argued repeatedly that it printed and began distributing the 2005-2006 Yellow Pages before Hurricane Wilma struck

14

South Florida on October 24, 2005. (*See* Def.'s Response to Pls.' Mot. for Class Certification [96] at 8.)  In fact, defendant claims that by mid-October delivery had been validated for about one-third of the Miami area directories. (*Id.* at 9-10.)  Although distribution was not complete, the first publication of the 2005-2006 Yellow Pages occurred in October, 2005, as scheduled.  Consequently, the 2004-2005 term ended in October, 2005, also as scheduled.  The Court thus **GRANTS** plaintiffs' motion for judgment on defendant's breach of contract counterclaim, as there is no basis for defendant's claim to additional monthly payments from repeat advertisers.

### C.   Unjust Enrichment

As the Court noted in its previous order, the parties agree that their relationship is governed by a valid and binding contract. (Amended Compl. [32] at ¶ 31; Answer [39] at ¶ 31.)  The theory of unjust enrichment only applies "'when there is *no* legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.'" *Tidikis v. Network for Med. Commc'ns & Research, LLC,* 274 Ga. App. 807, 811, 619 S.E. 2d 481, 485 (2005)(quoting *Smith Serv. Oil Co. v. Parker,* 250 Ga. App. 270, 272, 549 S.E. 2d 485 (2001)).  *See also, Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC,* 426 F.Supp. 2d 1356, 1372 (N.D. Ga. 2006)(Thrash, J.)(recognizing that, under Georgia law, "unjust enrichment is available only when there is no legal contract").  Accordingly,

AO 72A
(Rev.8/82)

plaintiffs' motion for judgment on the pleadings as to defendant's
unjust enrichment claim is **GRANTED**.

### III.  **Plaintiffs' Motion for Class Certification**

Plaintiffs have filed a motion to certify a class consisting of
the following:

> All customers of [defendant] who entered into a written
> contract (Advertising Order) and who fully paid the monthly
> installments  for  advertising/listing  in  the  2005-2006
> editions of The Real Yellow Pages (and collateral print
> materials) to be distributed in Miami-Dade County, Florida,
> and which customers did not receive twelve months of service
> beginning in October 2005 due to [defendant's] delay in
> distributing and [defendant's] failure to print or deliver
> a  sufficient  number  of  directories  to  residences  and
> businesses in Miami-Dade County, Florida.

(Pls.' Mot. for Class Certification [68] at 4.)  Although the Court
has granted summary judgment against the individual plaintiffs, it is
still appropriate to consider whether a class should be certified to
pursue the claims asserted by plaintiffs.  *See Cooper v. Southern
Co.*, 390 F.3d 695, 711 (11th Cir. 2004) ("Under the law of this
Circuit, a live controversy involving a putative class may continue
even when the claim of a specific plaintiff fails.  Thus, even if we
affirm each summary judgment order entered against the individual
plaintiffs, the class certification issue may not be moot, and we are
still required to address the district court's denial of class
certification.").  *See also Martinez-Mendoza v. Champion Int'l Corp.*,
340 F.3d 1200, 1216 (11th Cir. 2003)("even after finding against

16

plaintiffs on the merits, the [district] court should have determined whether the class action could be maintained, and whether the plaintiffs could represent that class").

In order to maintain a class action, the proposed class must satisfy all of the requirements of Federal Rule 23(a) and at least one of the alternative requirements of Rule 23(b). *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003)(citing *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir. 1975)).

**A.    Rule 23(a)**

Pursuant to Rule 23(a), a class may only be certified if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).   The four prerequisites of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Valley Drug,* 350 F.3d at 1188.  They are designed to limit class claims to those "'fairly encompassed by the

17

named plaintiffs' individual claims.'" *Id.* (quoting *Prado-Steiman v. Bush,* 221 F.3d 1266, 1278 (11th Cir. 2000)).

    1.   Numerosity

    Plaintiffs seek to certify a class that includes all other advertisers in the 2005-2006 Miami-Dade County Yellow Pages. (Pls.' Mot. for Class Certification [68] at 2.) As plaintiffs point out, the 2005-2006 edition of the Miami-Dade County Yellow Pages is comprised of two books, each of which is several inches thick. (*Id.*) Although plaintiffs do not specify the exact size of the putative class, defendant concedes that the 2005-2006 directory includes approximately 1,270 new advertisers, in addition to numerous repeat advertisers. (Def.'s Response to Pls.' Mot. for Class Certification ("Def.'s Response") [96] at 27.) Plaintiffs thus easily satisfy the numerosity requirement. *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors'") (quoting 3B MOORE'S FEDERAL PRACTICE § 23.05 (1978)) and *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 697 (N.D. Ga. 2001) (Story, J.) (stating that 2200 putative class members is "well beyond that which courts accept as satisfying the numerosity requirement").

    2.   Commonality

    The commonality requirement measures the extent to which all

18

members of a putative class have similar claims.  *Cooper,* 390 F.3d at 714.   The  threshold  for  commonality  is  not  high.   *Cheney  v. Cyberguard  Corp.,*  213  F.R.D.  484,  490  (S.D.  Fla.  2003)  (citing *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993)).  Commonality simply requires that there be at least one issue that affects all or a significant number of proposed class members. *Id.*

One  of  the  most  significant  issues  in  this  case  is  whether defendant  breached  the  AO  by  failing  to  timely  distribute  a sufficient number of 2005-2006 directories.   (Pls.' Mot. for Class Certification [68] at 5.)  Resolution of this issue involves a number of common legal questions concerning the interpretation of the AO, a form contract that defendant entered into with all of the putative class members.  It also involves common factual questions surrounding the distribution of the 2005-2006 Yellow Pages.   Plaintiffs thus satisfy the commonality requirement of Rule 23(a)(2).

### 3.    Typicality

Typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large.   *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003).   A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event and are based on the same legal theory.  *Kornberg v. Carnival Cruise Lines,*

19

*Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). *See also Cheney,* 213 F.R.D. at 491 (holding same). Like commonality, typicality does not require identical claims or defenses. *Id.* Factual differences will not render a representative's claim atypical unless the factual position of the representative markedly differs from that of other class members. *Id. See also Begley v. Academy Life Ins. Co.,* 200 F.R.D. 489, 496 (N.D. Ga. 2001)(Panell, J.)("minor factual variations will not render a class representative's claim atypical").

Here, the claims of the named plaintiffs and the putative class members arise from the same event: defendant's allegedly delayed and insufficient distribution of the 2005-2006 Miami-Dade County Yellow Pages. (Pls.' Mot. for Class Certification [68] at 3.) The legal theory asserted in support of all of the plaintiffs' claims is identical: plaintiffs paid for advertising that they did not receive, and are entitled to a refund. (*Id.*) Accordingly, the typicality requirement has been met.

    4.   <u>Adequacy</u>

The adequacy requirement applies to both class representatives and class counsel. *Veal v. Crown Auto Dealerships, Inc.,* 236 F.R.D. 572, 578 (M.D. Fla. 2006) (citing *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir. 2003)). In order to establish adequacy, the named representatives must be in a position to vigorously assert and defend the interests of the class. *Lyons v.*

AO 72A
(Rev.8/82)

*Georgia-Pacific Corp. Salaried Employees Retirement Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).   Class counsel likewise must be competent and qualified to prosecute the action.   *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985)("[t]he adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation").

Defendant argues that there is a potential conflict of interest between the named representatives and numerous putative class members as a result of defendant's counterclaims against repeat advertisers. (Def.'s Response [96] at 27.)   A representative who has an actual or potential conflict of interest with other class members cannot be expected to vigorously prosecute the interests of the class.   *Valley Drug,* 350 F.3d at 1189.   However, the Court has granted plaintiffs' motion for judgment on defendant's counterclaims.   Defendant's claims thus no longer raise the prospect of a conflict of interest between the named representatives and the putative class members who are repeat advertisers.

The Court is also satisfied that the attorneys representing the class are competent.   Plaintiffs' counsel Sam Holland is an AV rated attorney by Martindale Hubble and a member of the Florida Bar. (Pls.' Mot. for Class Certification [68] at 7.)   He has practiced for approximately 35 years and tried over 300 civil jury cases.   (*Id.*)

21

AO 72A
(Rev.8/82)

Mr. Holland will be assisted by Brian Pollock, who has prior class action experience. (*Id.* at 8.)  Plaintiffs' local counsel is James Ford, who also has prior class action experience in this and other districts. (*Id.*)

The Court is concerned, however, about whether these particular representatives are adequate, given that their individual claims have been dismissed.  One of the purposes of Rule 23 is to ensure that representatives "have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Prado-Steiman,* 221 F.3d at 1279.  *See also Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997)("'[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'")(quoting *E. Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)).  It is not clear what incentive the named representatives have to continue to participate in this litigation when they are barred from recovery against defendant under the voluntary payment doctrine.  Moreover, class representatives cannot simply abdicate the conduct of the case to their attorneys. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 728 (11th Cir. 1987)(noting that the named plaintiffs' participation cannot be "so minimal that they virtually have abdicated to their attorneys the conduct of the case").  *See also Veal,* 236 F.R.D. at 578-9 (finding a class representative

22

adequate where he testified that he "has participated and is willing to continue to participate in the litigation of the class claims"). The Court thus finds that plaintiffs have not met their burden of showing that the named representatives meet the adequacy requirement of Rule 23(a)(4).

### B.    Rule 23(b)

Ordinarily, the Court might give class counsel an opportunity to locate and substitute a suitable representative.  However, plaintiffs also fail to demonstrate that this case can be maintained as a class action under any provision of Rule 23(b).  *See Allapattah Serv. Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003)(noting that a class action may only be maintained if plaintiffs can establish at least one of the alternative requirements of Rule 23(b)).  Plaintiffs argue that certification is appropriate under either Rule 23(b)(1) or Rule 23(b)(3).[4]  (Pls.' Mot. for Class Certification [68] at 1.)  The Court finds that plaintiffs have not satisfied either provision.

### 1.    Rule 23(b)(1)

Rule 23(b)(1) permits certification where:

---

[4]  Rule 23(b)(2) is applicable to actions, such as civil rights suits, in which final injunctive or declaratory relief can settle the legality of a party's behavior with respect to the class as a whole. *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)(Evans, J.).  It is not applicable to cases, such as this one, in which the appropriate relief "'relates exclusively or predominantly to money damages.'"  *Id.*

AO 72A
(Rev.8/82)

prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

FED. R. CIV. P. 23(b)(1). The Eleventh Circuit has held that Rule 23(b)(1)(A) "does not apply to actions seeking compensatory damages." *In re Dennis Greenman Sec. Litigation,* 829 F.2d 1539, 1545 (11th Cir. 1987). *See also Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1078 (11th Cir. 2000)("Because [plaintiff's] class seeks compensatory damages, it cannot be certified as a (b)(1)(A) class.") Section (b)(1)(A) is thus inapplicable to this case.

As for potential certification under Rule 23(b)(1)(B), it is unclear how individual suits against defendant brought by one or more class members, "as a practical matter, would be dispositive of the interests of the other members . . . or would substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1)(B). The possibility that an individual suit will have either precedential or stare decisis effect on later suits is not sufficient to satisfy Rule 23(b)(1). *Cohen,* 204 F.3d at 1078.

24

Neither is it sufficient for plaintiffs to show that in individual actions some class members may prevail and others may not. *Jones v. Am. Gen. Life and Acc. Ins. Co.,* 213 F.R.D. 689, 697-98 (S.D. Ga. 2002). *See also Greenman Sec. Lit.,* 829 at 1545 (finding certification improper merely because a defendant may be found liable to some plaintiffs and not to others). Rule 23(b)(1)(B) is thus similarly inapplicable.

> ### 2.   Rule 23(b)(3)

Rule 23(b)(3) authorizes a class action where:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000). In order to qualify as a Rule 23(b)(3) class action, the issues that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. *Id. See also Begley,* 200 F.R.D. at 497 (discussing the requirements of Rule 23(b)(3)).

The Court held above that the named representatives' refund claims are barred by the voluntary payment doctrine. In order to reach this holding, the Court had to consider the individual

25

testimony of each plaintiff concerning his knowledge about defendant's distribution of the 2005-2006 Yellow Pages. The putative class members similarly assert refund claims that will stand or fall on the Court's resolution of the highly individualized voluntary payment issue. The Eleventh Circuit has made clear that certification under Rule 23(b)(3) is not appropriate under such circumstances. *Cooper,* 390 F.3d at 722. *See also Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004)(holding that claims are not suitable for certification under Rule 23(b)(3) where, after adjudication of the class-wide issues, individual class members must still introduce a great deal of individualized proof to prevail on their claims) and *Rutstein,* 211 F.3d at 1235-6 ("Serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability *vel non*, turn upon highly individualized facts.").

As plaintiffs cannot satisfy any of the alternative provisions of Rule 23(b), there is no basis for certifying this case as a class action. Accordingly, plaintiffs' motion for class certification is **DENIED**.

## IV.   **Miscellaneous Preliminary Motions**

This litigation has been extremely contentious, resulting in numerous motions that are ancillary to the substantive motions discussed above. The Court's rulings on the parties' motions for

26

summary judgment, judgment on the pleadings, and class certification have rendered most of these motions moot.   However, for clarity, certain motions merit a short discussion.

In conjunction with their opposition to defendant's motion for summary judgment, plaintiffs filed a motion to strike various declarations submitted in support of the summary judgment motion. (Pl.'s Mot. to Strike [109].)   Plaintiffs contend that the Court should not consider the declarations because they are based on documents and materials that defendant withheld from plaintiffs. (*Id.* at 3-5.)   All of the material facts necessary to resolve defendant's motion for summary judgment were available in the pleadings and plaintiffs' deposition testimony.   Accordingly, the Court did not rely on any of the declarations submitted by defendant, and **DENIES as moot** plaintiffs' Motion to Strike [109].

Plaintiffs also filed a motion to strike defendant's opposition to plaintiffs' class certification motion because the opposition exceeds the page limits of Local Rule 7.1(D).   (Pls.' Mot. to Strike [104].)   Defendant filed a motion for leave to exceed the page limit because additional space was necessary to address the issues plaintiffs raised in their motion.   The Court **GRANTED** that motion above.   The Court thus **DENIES** plaintiffs' Motion to Strike [104].

In   addition,   plaintiffs   asserted   a   motion   for   "legal accounting."   In this motion, plaintiffs request a Court order

27

requiring defendant to provide an account of the money that plaintiffs and other advertisers paid defendant while the distribution of the 2005-2006 Yellow Pages was delayed. (Pls.' Mot. for Legal Accounting [108].)  Plaintiffs' motion for a "legal accounting" is thus essentially a request for damages discovery.  The Court has determined that plaintiffs are precluded from recovering any refunds under the voluntary payment doctrine.  Accordingly, plaintiffs' Motion for Legal Accounting [108] is **DENIED as moot.**

Finally, defendant has filed a motion to strike plaintiffs' objection to defendant's witness declarations and plaintiffs' statement of disputed material facts. (Def.'s Mot. to Strike [138].) As noted, the Court granted defendant's motion for summary judgment without considering the declarations.  Defendant's motion to strike plaintiffs' objection to the declarations is therefore **DENIED as moot.**

Defendant's motion to strike plaintiffs' disputed material facts is also **DENIED.**  This motion is based on plaintiffs' failure to comply with Local Rule 56.1(B), which requires separate, numbered responses to each of defendant's undisputed facts.  (*Id.* at 3.) Although plaintiffs' statement of disputed facts did not strictly comply with the local rules, the Court considered all of plaintiffs' statements in ruling on the motion for summary judgment.

AO 72A
(Rev.8/82)

## CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' Motion for Class Certification [68], **GRANTS** plaintiffs' Motion for Judgment on the Pleadings on Defendant's Counterclaims [84], **DENIES as moot** defendant's Motion for a Scheduling Conference [86], **GRANTS** defendant's Motion for an Extension of the Page Limitation [94], **DENIES** plaintiffs' Motion to Strike and for Sanctions [104], **DENIES as moot** defendant's Motion for Protective Order [105], **DENIES** plaintiffs' Motion for a Legal Accounting [108], **DENIES as moot** plaintiffs' Motion to Strike [109], **GRANTS** defendant's Unopposed Motion for an Extension of Time [118], **GRANTS** defendant's Motion for Summary Judgment [119], **DENIES** defendant's Motion to Strike [138], **DENIES** plaintiffs' Motion for Partial Summary Judgment [139], **GRANTS** plaintiffs' Motions for Extension of Time [147, 148], and **DENIES as moot** plaintiffs' Motion to Determine Sufficiency of Responses [150].

SO ORDERED, this ___7 day of March, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

29

AO 72A
(Rev.8/82)